# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2022AP1909

† Petition for Review filed

Complete Title of Case:

**WISCONSIN DEPARTMENT OF REVENUE,**

PETITIONER-RESPONDENT,

**CITY OF PLYMOUTH,**

INTERVENOR-RESPONDENT,

V.

**MASTER'S GALLERY FOODS, INC.,**

RESPONDENT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | March 20, 2024 |
| Submitted on Briefs: | August 28, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | Grogan, J. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Don M. Millis*, *Sara Stellpflug Rapkin*, and *Olivia Schwartz* of *Reinhart Boerner Van Deuren s.c.*, Madison. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Brian P. Keenan*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Amy R. Seibel* of *Seibel Law Office, LLC.*, Mequon.

COURT OF APPEALS
DECISION
DATED AND FILED

**March 20, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1909**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV99

**IN COURT OF APPEALS**

WISCONSIN DEPARTMENT OF REVENUE,

    PETITIONER-RESPONDENT,

CITY OF PLYMOUTH,

    INTERVENOR-RESPONDENT,

  V.

MASTER'S GALLERY FOODS, INC.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1     NEUBAUER, J.   Master's Gallery Foods, Inc. appeals from a circuit court order reversing a decision of the Wisconsin Tax Appeals Commission (the "Commission").  The Commission concluded certain equipment located at Master's Gallery's food production facility was exempt from taxation under WIS. STAT. § 70.111(27)(b) (2021-22),[1] which exempts "machinery, tools, and patterns, not including such items used in manufacturing."  The Commission concluded that the statute was not ambiguous and exempted machinery, tools, and patterns so long as they are not used in any way in a manufacturer's production process.  Based on its reading of the statute, the Commission determined that some of Master's Gallery's property was exempt.

¶2     The Wisconsin Department of Revenue (the "Department") challenged the Commission's decision in the circuit court, which disagreed with the Commission's interpretation of the statute.  The court concluded that WIS. STAT. § 70.111(27) is ambiguous and looked to legislative history surrounding the statute's enactment to ascertain its meaning.  The court concluded that the legislative history showed the exemption applies only to machinery, tools, and patterns that are not "manufacturing property" under WIS. STAT. § 70.995(1)(a), which is assessed for taxation purposes by the Department rather than municipal assessors.  Because the property of Master's Gallery at issue was "manufacturing property" under § 70.995(1)(a), and thus had been assessed by the Department, the court concluded that none of it was exempt under § 70.111(27).  For the reasons explained below, we agree with the court's conclusion that § 70.111(27) is ambiguous and with its reading of the legislative history.  Therefore, we affirm the court's order.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

## BACKGROUND

¶3      To provide context for the underlying facts and procedural history of this case, we begin with an overview of the relevant statutes.

### I.      Relevant Statutory Framework

¶4      Chapter 70 of the Wisconsin Statutes governs the taxation of general property in this state.  All general property, which includes real property and personal property, is taxable unless it qualifies for a statutory exemption.  WIS. STAT. §§ 70.01, 70.02.

¶5      Most property in Wisconsin is assessed for tax purposes by local assessors, *see* WIS. STAT. § 70.05, but certain property involved in manufacturing activities is treated differently.  If a business engages in manufacturing activity as defined in WIS. STAT. § 70.995(1)-(2), it reports its "manufacturing property" used in that activity to the Department for assessment.  Sec. 70.995(5).  At the time of the assessment at issue here, "manufacturing property" was principally defined to include

> all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit. Manufacturing property also includes warehouses, storage facilities and office structures when the predominant use of the warehouses, storage facilities or offices is in support of the manufacturing property, and all personal property owned or used by any person engaged in this state in any of the activities mentioned, and used in the activity, including raw materials, supplies, machinery, equipment, work in process and finished inventory when located at the site of the activity.

Sec. 70.995(1)(a).[2]  Property that is not "manufacturing property" under § 70.995, whether owned by manufacturers or nonmanufacturers, is reported to local assessors.

¶6      In addition to requiring the Department to assess "manufacturing property," Chapter 70 exempts certain property used in manufacturing activities from taxation.  Specifically, WIS. STAT. § 70.11(27)(b) exempts "[m]achinery and specific processing equipment; and repair parts, replacement machines, safety attachments and special foundations for that machinery and equipment; that are used *exclusively and directly* in the production process in manufacturing tangible personal property, regardless of their attachment to real property, but not including buildings."  *Id.* (emphasis added).  This exemption does not apply to all manufacturer machinery; rather, as the italicized language indicates, it is limited to items that are used "exclusively" and "directly" in the manufacturer's "production process."[3]  *Id.*

---

[2] In June 2023, the Wisconsin legislature amended the definition of "manufacturing property" in WIS. STAT. § 70.995(1)(a) by deleting the words "and all personal property owned or used by any person engaged in this state in any of the activities mentioned, and used in the activity, including raw materials, supplies, machinery, equipment, work in process and finished inventory when located at the site of the activity."  *See* 2023 Wis. Act 12, § 129.

[3] "Production process" is defined in WIS. STAT. § 70.11(27)(a)5. as:

¶7     This appeal focuses on a different statutory exemption, WIS. STAT. § 70.111(27), which was enacted in 2017.  *See* 2017 Wis. Act 59, § 997J.[4]  The exemption, which applies to machines, tools and patterns (MTP), states as follows:

> **70.111  Personal property exempted from taxation.**  The property described in this section is exempted from general property taxes:
>
> ….
>
> **(27)**  MACHINERY, TOOLS, AND PATTERNS.
>
> **(a)**  In this subsection, "machinery" means a structure or assemblage of parts that transmits force, motion, or energy from one part to another in a predetermined way by electrical, mechanical, or chemical means. "Machinery" does not include a building.
>
> **(b)**  Beginning with the property tax assessments as of January 1, 2018, machinery, tools, and patterns, not including such items used in manufacturing.
>
> **(c)**  A taxing jurisdiction may include the most recent valuation of personal property described under par. (b) that is located in the taxing jurisdiction for purposes of

---

the manufacturing activities beginning with conveyance of raw materials from plant inventory to a work point of the same plant and ending with conveyance of the finished product to the place of first storage on the plant premises, including conveyance of work in process directly from one manufacturing operation to another in the same plant, including the holding for 3 days or less of work in process to ensure the uninterrupted flow of all or part of the production process and including quality control activities during the time period specified in this subdivision but excluding storage, machine repair and maintenance, research and development, plant communication, advertising, marketing, plant engineering, plant housekeeping and employee safety and fire prevention activities; and excluding generating, transmitting, transforming and furnishing electric current for light or heat; generating and furnishing steam; supplying hot water for heat, power or manufacturing; and generating and furnishing gas for lighting or fuel or both.

[4]  2017 Wisconsin Act 59 is referred to herein as "Act 59."

complying with debt limitations applicable to the jurisdiction.

Sec. 70.111(27). For the purpose of this case, the key language appears in subsection (b), which states the exemption applies to "machinery, tools, and patterns," but not if they are "*used in manufacturing*." Sec. 70.111(27)(b) (emphasis added).

¶8 After the enactment of WIS. STAT. § 70.111(27), the Department issued interpretive guidance expressing its view that this exemption "applies only to locally assessed personal property," not to "DOR assessed manufacturing personal property."

## II. The Department's Assessment of Master's Gallery's Property

¶9 Master's Gallery is a Wisconsin corporation that manufactures and distributes cheese and cheese-related products from its facility in Plymouth, Wisconsin. Master's Gallery engages in a manufacturing activity, *see* WIS. STAT. § 70.995(2)(c), and its Plymouth facility is a "manufacturing establishment" for the purpose of § 70.995. Thus, the property at issue in this case was reported by Master's Gallery to the Department for assessment. *See* § 70.995(5).

¶10 In July 2018, the Department issued a notice to Master's Gallery assessing the value of machinery, equipment, furniture, fixtures, and other personal property at the Plymouth facility at approximately $2.8 million. Master's Gallery filed an objection with the Wisconsin State Board of Assessors, claiming an assessment value of approximately $1.3 million. Much of the difference between these assessments was due to Master's Gallery's contention that the Department had incorrectly interpreted WIS. STAT. § 70.111(27). The Board of Assessors disagreed with Master's Gallery and sustained the Department's assessment.

### III.   Tax Appeals Commission Proceedings

¶11   Master's Gallery filed a petition for review of the Board of Assessors' decision with the Wisconsin Tax Appeals Commission.  The Department and Master's Gallery filed cross motions for summary judgment based on a set of stipulated facts which included two exhibits describing the property in dispute as follows:

- Exhibit D:  machines or tools at the Plymouth facility that were used directly but not exclusively in Master's Gallery's manufacturing process; and

- Exhibit E:  machines or tools at the Plymouth facility that were not used directly or exclusively in the manufacturing process.

¶12   Several Wisconsin cities filed amicus briefs with the Commission in support of the Department's position that none of this property was exempt under WIS. STAT. § 70.111(27).  In their briefs, the cities discussed other provisions in Act 59 related to § 70.111(27) as well as several items of legislative history and other materials related to § 70.111(27)'s enactment.  The cities argued that this evidence showed the legislature's intent that the exemption not apply to manufacturer-owned MTP reported to the Department for assessment.

¶13   The Commission issued an initial decision in September 2020 which steered a middle course between the parties' interpretations of WIS. STAT. § 70.111(27).  Initially, the Commission wrote that the statute "is not ambiguous and has one clear and reasonable meaning" and thus declined to consider the legislative history evidence presented by the cities.  The Commission then rejected the Department's contention that § 70.111(27) does not exempt any MTP that

qualifies as "manufacturing property" under WIS. STAT. § 70.995. The Commission also rejected Master's Gallery's interpretation of the exemption as applicable to all manufacturer MTP not exempt under WIS. STAT. § 70.11(27). Instead, the Commission concluded that the word "manufacturing" in § 70.111(27) had the same meaning given to that word in § 70.11(27)(a)3.—"an activity classified as manufacturing under s. 70.995." To determine "the borders of 'the activity,'" the Commission looked to "the beginning and end points defined in the production process." Using those parameters, the Commission concluded that "[a]ny MTP used in relation to work in progress at any time after manufacturing has commenced and prior to completion is … used in manufacturing." Based on this conclusion, the Commission interpreted § 70.111(27) to exempt "any [MTP] that are used in any way in manufacturing, which here means used at all in the production of cheese and cheese-related products."

¶14 Based on its interpretation of WIS. STAT. § 70.111(27), the Commission ruled that the machinery and tools listed on Exhibit D to the parties' stipulation were not exempt because those items were used (albeit not exclusively) in Master's Gallery's manufacturing process. As for the machinery and tools listed on Exhibit E to the stipulation, which were not used directly or exclusively in the manufacturing process, the Commission required the parties to winnow the list down to those items "not used, even indirectly or non-exclusively, in manufacturing cheese products." Only those items would qualify for the § 70.111(27) exemption. After additional follow-up work by the parties, the Commission issued a final order which incorporated its analysis of the statute and identified those items on Exhibit E that were exempt.

**IV.    The Circuit Court Reverses the Commission's Decision.**

8

¶15    The Department sought certiorari review of the Commission's decision in the circuit court.  *See* WIS. STAT. §§ 73.015, 227.52, 227.53.  Pursuant to a stipulation between the Department and Master's Gallery, the circuit court granted the City of Plymouth leave to intervene as a party in the case.

¶16    Following the submission of briefs, the circuit court concluded that the Commission had erroneously interpreted WIS. STAT. § 70.111(27)(b).  The court concluded that the phrase "used in manufacturing" in § 70.111(27)(b) is ambiguous and looked to the legislative history surrounding its enactment to determine the statute's meaning.  After reviewing the legislative history, the court concluded that the Department's interpretation of § 70.111(27) was correct.  Based upon its conclusion, the court granted the Department's petition and reversed the Commission's decision.

## DISCUSSION

### I.    Standard of Review

¶17    Though this case comes to us from the circuit court, "[w]e review the Commission's decision rather than the circuit court's."  *Citation Partners, LLC v. DOR*, 2023 WI 16, ¶8, 406 Wis. 2d 36, 985 N.W.2d 761.  Master's Gallery and the Department premised their arguments before the Commission on a stipulated set of facts.  Neither party argues there are any disputes of fact relevant to our analysis.  Thus, our focus is the Commission's interpretation of WIS. STAT. § 70.111(27).  We construe the statute de novo and without deference to the Commission's

interpretation.[5]  *See* WIS. STAT. § 227.57(11); ***Citation Partners***, 406 Wis. 2d 36, ¶8.  Though we do not review the circuit court's decision, we may benefit from its analysis.  *See* ***Sausen v. Town of Black Creek Bd. of Rev.***, 2014 WI 9, ¶5, 352 Wis. 2d 576, 843 N.W.2d 39.

## II.     Principles of Statutory Interpretation

¶18     When interpreting statutory language, our aim "is to determine what the statute means so that it may be given its full, proper, and intended effect."  ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  To do so, we give the language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  ***Id.***, ¶45.  We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  ***Id.***, ¶46.

¶19     "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning."  ***Id.*** (citation omitted).  If, on the other hand, statutory language "is capable of being understood by reasonably well-informed persons in two or more senses," then it is ambiguous.  ***Id.***, ¶47.  To resolve ambiguity, we may consult "'extrinsic sources' … outside the statutory text—typically items of legislative history."  ***Id.***, ¶50 (citation omitted).

---

[5] The parties argue about whether we should give "due weight" to the Commission's interpretation of WIS. STAT. § 70.111(27) under ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21.  In light of our conclusion that the statute is ambiguous and that the extrinsic materials presented to the Commission persuade us that § 70.111(27) does not apply to manufacturing property assessed by the Department, we need not resolve that issue.

¶20 Exemptions from taxation are "strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption." WIS. STAT. § 70.109. Master's Gallery must show that its property clearly falls within the terms of the exemption. *See Southwest Airlines Co. v. DOR*, 2021 WI 54, ¶26, 397 Wis. 2d 431, 960 N.W.2d 384. Exemptions "must be clear and express, and not extended by implication." *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶13, 302 Wis. 2d 245, 733 N.W.2d 322. Doubts regarding the applicability of an exemption are resolved "in favor of taxability." *Id.*

### III. Analysis of WIS. STAT. § 70.111(27)

¶21 The Department begins its analysis of WIS. STAT. § 70.111(27) by noting that because Master's Gallery submitted the MTP at issue to the Department for assessment, it necessarily fell within WIS. STAT. § 70.995(1)(a)'s definition of "manufacturing property." Thus, in the language of that definition, the MTP was "personal property owned or used by any person engaged in this state in any of the [manufacturing] activities mentioned" (here, Master's Gallery is engaged in food production) and was "used in the activity." *See id.* And because the MTP was used in Master's Gallery's manufacturing activity, the Department argues, it could not be exempt under WIS. STAT. § 70.111(27) because that provision is not limited to MTP used in the production process.[6] The Department urges us to reject the

---

[6] The Department asserts that it is not arguing that "property owned by a manufacturer can never" be exempt under WIS. STAT. § 70.111(27). Instead, it contends "that property assessed by the Department under WIS. STAT. § 70.995 … is not eligible because it is 'manufacturing property' that must be used in a manufacturing activity to qualify as such." The Department acknowledges that "locally assessed property," whether owned by a manufacturer or a nonmanufacturer, "is potentially eligible for the exemption because it is not 'manufacturing property' and [is] not used in a manufacturing activity." This case, however, involves only property that was submitted to the Department for assessment.

Commission's interpretation of "used in manufacturing," claiming the Commission's limitation of "manufacturing" to a "subset of manufacturing [activity]," the "production process" as defined in WIS. STAT. § 70.11(27)(a)5., ignores that § 70.995(1)(a) necessarily defines property more broadly as property owned or used by a person engaged in manufacturing activity and used in that activity.

¶22 Master's Gallery does not argue the position it took before the Commission—that WIS. STAT. § 70.111(27) exempts all manufacturer MTP that is not exempt under WIS. STAT. § 70.11(27). Rather, Master's Gallery asks us to adopt the Commission's interpretation of § 70.111(27). It argues that the Commission correctly determined that § 70.111(27) could apply to MTP owned or used by a manufacturer or located at a manufacturing establishment that is not used in the production process. It contends that other provisions in Chapter 70 are more relevant to determine the meaning of the exemption than WIS. STAT. § 70.995(1)(a). As to the terms of § 70.111(27), Master's Gallery emphasizes that they exclude MTP from its scope based on use, not the identity of the owner or user. In other words, the exemption does not say that MTP owned or used by manufacturers is not exempt; it says rather that MTP "used in manufacturing" is not exempt. Master's Gallery contrasts the wording of § 70.111(27)(b) with other exemptions in Chapter 70 that expressly define their scope by the identity of the owner or user. *See, e.g.*, § 70.111(9) (exempting "garden machines and implements and farm, orchard and garden tools if those machines, implements and tools are owned and used by any person in the business of farming"); § 70.111(14) (exempting "[m]ilkhouse equipment used by a farmer"). It argues the Commission correctly concluded that § 70.111(27) exempts MTP regardless of who owns or uses it, so long as it is not used in manufacturing.

¶23    After careful consideration of the parties' arguments, we conclude that WIS. STAT. § 70.111(27) is ambiguous because it does not define the phrase "used in manufacturing." Though not all undefined statutory language is ambiguous, the absence of a definition here leaves § 70.111(27) "capable of being understood by reasonably well-informed persons in two or more senses." *See Kalal*, 271 Wis. 2d 633, ¶47. On one hand, Master's Gallery is correct that § 70.111(27) does not say that MTP owned or used by a manufacturer is outside the scope of the exemption; it provides that MTP is not exempt if it is "used in manufacturing." Sec. 70.111(27)(b). Master's Gallery suggests that we follow the Commission's lead in looking to the definition of "manufacturing" in WIS. STAT. § 70.11(27) for guidance. As we previously explained, § 70.11(27)(a)3. defines "[m]anufacturing" as "engaging in an activity classified as manufacturing under s. 70.995." The Commission then defined "the borders" of manufacturing activity by "the beginning and end points defined in the production process" and concluded that Master's Gallery's MTP was exempt under § 70.111(27) so long as it was not used in any way in the production process to manufacture cheese and cheese-related products.

¶24    On the other hand, a reasonably well-informed person could also construe the phrase "used in manufacturing" in WIS. STAT. § 70.111(27)(b) not to exempt the property at issue in this case. That property was assessed by the Department, which means that it was determined to be "manufacturing property" under § 70.995(1)(a)—that is, property "owned or used by" Master's Gallery, a manufacturer engaged in the manufacturing activity of food production, "and used in" that food production activity. *See id.* Thus, MTP that is submitted to the Department for assessment is necessarily "used in manufacturing" and thus not exempt under § 70.111(27). Construing § 70.111(27) not to exempt MTP that is

13

assessed by the Department is consistent with the strict construction we are to afford exemptions under Chapter 70. *See* WIS. STAT. § 70.109. It is an "equally sensible interpretation[]" of the statute. *See **Bruno v. Milwaukee County***, 2003 WI 28, ¶21, 260 Wis. 2d 633, 660 N.W.2d 656 (citation omitted).

¶25 Because we conclude that WIS. STAT. § 70.111(27) is ambiguous, we may look to extrinsic sources to ascertain its meaning, including "materials pertaining to the passage of a statute, historical events that occurred at the time of enactment, and information generated after the statute's passage." *See **Seider v. O'Connell***, 2000 WI 76, ¶53, 236 Wis. 2d 211, 612 N.W.2d 659. An ambiguous statute "must be interpreted and applied so it is consistent with the statutory scheme in which it appears." ***Hoague v. Kraft Foods Glob., Inc.***, 2012 WI App 130, ¶10, 344 Wis. 2d 749, 824 N.W.2d 892.

¶26 Before we examine the extrinsic evidence in the record, we note that the legislature included three provisions in Act 59 that relate to WIS. STAT. § 70.111(27). First, Act 59 created WIS. STAT. § 79.096, which states in part:

> Beginning in 2019, and in each year thereafter, the department of administration shall pay to each taxing jurisdiction … an amount equal to the property taxes levied on the items of personal property described under s. 70.111(27)(b) for the property tax assessments as of January 1, 2017.

2017 Wis. Act 59, § 1210P. To fund these payments, the legislature also enacted WIS. STAT. § 20.835(1)(f), which directs the appropriation of "[a] sum sufficient to make the state aid payments under s. 79.096." 2017 Wis. Act 59, § 480D. Finally, for the 2018-19 fiscal year, the legislature allocated $74.4 million to make the payments required under § 79.096(1). *See* 2017 Wis. Act 59, § 183. In determining

14

what § 70.111(27) means, we must endeavor to harmonize it with these related provisions. *See Kalal*, 271 Wis. 2d 633, ¶46.

¶27    The extrinsic evidence presented by the cities to the Commission consists of two affidavits from Rick Olin, a fiscal analyst with the Legislative Fiscal Bureau (LFB). The LFB is a nonpartisan agency that "provides fiscal and program information and analyses to the Wisconsin Legislature, its committees, and individual legislators." *City of Menasha v. WERC*, 2011 WI App 108, ¶16 n.10, 335 Wis. 2d 250, 802 N.W.2d 531. Attached to one of the affidavits are four exhibits: (1) a table prepared by LFB displaying the amount of property taxes paid on certain categories of personal property in 2017; (2) a copy of an omnibus motion presented to the legislature concerning "Shared Revenue, Tax Relief, Local Government and Budget Management" which addresses the enactment of WIS. STAT. § 70.111(27); (3) excerpts from a Comparative Summary of Provisions related to the 2019-2021 Wisconsin State Budget prepared by LFB and dated August 2019; and (4) a Memorandum from LFB Director Bob Lang to the Joint Committee on Finance dated February 14, 2020.

¶28    Beyond its general contention that the Commission properly declined to consider this evidence because WIS. STAT. § 70.111(27) is not ambiguous, Master's Gallery does not argue that the affidavits and exhibits are not relevant in determining § 70.111(27)'s meaning. Moreover, Wisconsin courts have previously considered affidavits, summaries, and other materials from LFB in determining the meaning of statutes. *See, e.g.*, *Juneau County v. Courthouse Emps., Loc. 1312*, 221 Wis. 2d 630, 645-48, 585 N.W.2d 587 (1998); *City of Menasha*, 335 Wis. 2d 250, ¶¶16-17; *Rychnovsky v. Village of Fall River*, 146 Wis. 2d 417, 421-22, 431 N.W.2d 681 (Ct. App. 1988). Based on Master's Gallery's lack of objection and this prior practice, we will consider these materials.

15

¶29    The Olin affidavits and attached exhibits provide a compelling explanation of WIS. STAT. § 70.111(27)'s intended meaning.  According to Olin, before Act 59 was passed, "LFB was asked to estimate the fiscal effect of: (1) exempting personal property from the property tax; and (2) creating a state aid program to compensate local governments for, and hold taxpayers harmless from, the annual loss of tax base resulting from such an exemption."  In response to this request, LFB created a table containing its estimates of the tax base attributable to certain categories of personal property, including MTP.  The table indicated an estimate of $74.4 million in personal property taxes paid in 2017 on MTP of "property owners who were not manufacturers and who had reported such items to municipal assessors."  LFB also examined the tax base resulting from taxation of manufacturer-owned (and Department assessed) MTP and estimated that value at $41.3 million.  Thus, if the legislature were to enact an exemption that applied only to nonmanufacturer (i.e., locally assessed) MTP, LFB estimated that $74.4 million in state aid would be required to make up for the resulting loss of tax base.  But if the legislature decided to exempt MTP owned by manufacturers and nonmanufacturers, LFB estimated a total of $115.7 million in state aid would be required to offset the exemption.

¶30    The omnibus motion submitted to the legislature after the bureau's analysis recommended that the legislature "[e]xempt [MTP], not including such items considered manufacturing property under current law, from the property tax" and offset this exemption by paying local taxing jurisdictions a total of $74.4 million annually.  The legislature followed through on this suggestion in Act 59 by creating the state aid program in WIS. STAT. § 79.096(1), enacting an appropriation to fund

16

the program in WIS. STAT. § 20.835(1)(f), and appropriating $74.4 million for the aid payments. *See* 2017 Wis. Act 59, § 183.[7]

¶31 Together, these interrelated statutory provisions and the extrinsic evidence clearly establish the meaning of WIS. STAT. § 70.111(27).[8] These materials clarify that § 70.111(27) was enacted to exempt from taxation only MTP that is reported to local assessors. Construing the exemption to apply only to locally assessed property harmonizes it with its related statutes, gives the exemption a strict but not unreasonable reading as required under WIS. STAT. § 70.109, and prevents overlap with the exemption in WIS. STAT. § 70.11(27) for MTP that is assessed by the Department.

¶32 Master's Gallery's response to the legislative history is not convincing. It points to deposition testimony given by Olin which, in its view, shows that the legislature did not intend the aid program created by WIS. STAT. § 79.096(1) to fully compensate municipalities for the loss of tax base resulting from WIS. STAT. § 70.111(27)'s enactment. Master's Gallery argues that Olin conceded the aid program is "at best [an] approximated reimbursement for a portion of the tax base" lost due to the new exemption. Even if we credit Master's Gallery's reading

---

[7] The Comparative Summary of Provisions prepared by LFB shows the $74.4 million in state aid doubled to $148.8 million for the two-year period 2018-19, which Olin confirms is "the amount allocated by the Legislature as the amount of state aid to compensate for the lost tax base due to the exemption of non-manufacturing machinery, tools and patterns."

Because the LFB table, the omnibus motion, and the comparative summary are, in our view, sufficiently persuasive of the meaning of WIS. STAT. § 70.111(27), we need not consider the parties' arguments concerning the other item of legislative history attached to Olin's affidavit—the February 2020 memorandum from LFB director Lang to the Joint Committee on Finance.

[8] The dissent contends that our analysis is limited to "extrinsic sources," Dissent, ¶35, but fails to acknowledge that our reading of WIS. STAT. § 70.111(27)(b) is, as it must be, based on the interrelated statutory provisions enacted with that statute that established the state aid payments (WIS. STAT. § 79.096) and directed the allocation of funds to make them (WIS. STAT. § 20.835(1)(f)). *See supra* ¶26.

17

of Olin's testimony, it does not completely sever the link between the exemption and the aid program. It remains the case that: (1) LFB was directed to estimate the amount of money that would be necessary to compensate for the loss of tax base resulting from a personal property exemption; (2) LFB provided estimates of the loss of tax base that would result from the exemption of various categories of personal property, one of which was MTP reported to municipal assessors; and (3) the legislature appropriated the exact amount LFB estimated to be the loss that would result from exempting locally assessed MTP to fund the aid payments intended to compensate for the enactment of § 70.111(27). That LFB might have been able to provide a more precise measure of the exemption's fiscal impact does not diminish the significance of its analysis in determining the exemption's scope.

## CONCLUSION

¶33    For the reasons stated above, the Commission erred in concluding that WIS. STAT. § 70.111(27) is unambiguous and can exempt MTP submitted to the Department for assessment so long as the MTP is not used in any way in a manufacturing production process. Like the circuit court, we conclude that § 70.111(27) is ambiguous, but that the legislative history surrounding its enactment demonstrates that the exemption does not apply to MTP that is assessed by the Department under WIS. STAT. § 70.995. Because the property of Master's Gallery at issue here was submitted to the Department for assessment, it does not qualify for the § 70.111(27) exemption.

*By the Court.*—Order affirmed.

18

No.   2022AP1909(D)


¶34   GROGAN, J. (*dissenting*).   Having reviewed the Record, the parties' briefs, and relevant statutory language, I conclude that the phrase "machinery, tools, and patterns, not including such items used in manufacturing" in WIS. STAT. § 70.111(27)(b) (2021-22)[1] is unambiguous.[2]   Where no ambiguity exists, we simply apply the statute's plain meaning.  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶47-48, 271 Wis. 2d 633, 681 N.W.2d 110.   "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."   *Id.*, ¶45.   The plain meaning of "such items used in manufacturing" in the context of § 70.111(27)(b) means those items—here, "machinery, tools, and patterns"—that are actually used in manufacturing the product.   This, in essence, is consistent with the Commission's determination— although the Commission relied on the definition of "manufacturing" in WIS. STAT. § 70.11(27)(a)3—which provides:   "'Manufacturing' means engaging in an *activity* classified as *manufacturing* under s. 70.995."   (Emphases added.)

¶35   The Majority concludes that the text of this statute is ambiguous, and it therefore turns to extrinsic sources to determine what it thinks the legislature meant by the words "machinery, tools, and patterns, not including such items used

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This statute provides, as material:   "The property described in this section is exempted from general property taxes: … (27)(b) … machinery, tools, and patterns, not including such items used in manufacturing."   WIS. STAT. § 70.111(27)(b).   In other words, "machinery, tools, and patterns" are not exempt if they are "used in manufacturing."

in manufacturing." According to the Majority, the legislature intended these words to mean *all* property that is "owned or used by" a manufacturer—*any* property that is *submitted* to the Department for assessment. *See* Majority, ¶¶21-25, 33. It dismisses the Commission's interpretation of the statutory words based on the Majority's review of affidavits from a fiscal analyst, a table displaying 2017 property taxes, items presented to the legislature, and a memorandum to the joint finance committee from 2020. The Majority says these materials support its interpretation. Majority, ¶31. I disagree with the Majority.

¶36 ***Kalal*** directs us that: "[i]t is the enacted law, not the unenacted intent, that is binding on the public." ***Kalal***, 271 Wis. 2d 633, ¶44. The enacted law does not say "*owned by and* used in." It does not say "*all* property used in *the* manufacturing *industry*" or "*all* manufacturing property." Nor does it say "*any* property that a manufacturer *submits* to the Department for assessment."

¶37 I would apply the plain meaning of the text actually enacted and stop there. Accordingly, I respectfully dissent.